JOSHUA S. GOODMAN, ESQUIRE - State Bar #116576
ZACHARY S. TOLSON, ESQUIRE - State Bar # 242824
JENKINS GOODMAN NEUMAN & HAMILTON LLP
417 Montgomery Street, 10th Floor
San Francisco, California  94104
Telephone:    (415) 705-0400
Facsimile:    (415) 705-0411

Attorneys for Defendant
COLUMBIA PAINT & COATINGS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA -- OAKLAND DIVISION

| | |
|---|---|
| SHEIK ZAHID ALI and SAFIYA ZAYNA ALI, | Case No. C07-04263-BZ |
| Plaintiffs, | **DECLARATION OF STEPHEN GORDON IN SUPPORT OF DEFENDANT COLUMBIA PAINT AND COATINGS' MOTION TO DISMISS** |
| vs. | |
| TRIMAC TRANSPORTATION SERVICES (WESTERN) INC.; COLUMBIA PAINT & COATINGS; ROHM AND HAAS COMPANY; and DOES 2 to 100, | |
| Defendants. | |

## DECLARATION

I, STEPHEN GORDON, declare:

1. At the time of this accident I was the Executive Vice President of COLUMBIA PAINT & COATINGS (hereinafter "Columbia"), one of the defendants in this action, and I have personal knowledge of each fact stated in this declaration.

2. Columbia does not submit to this Court's jurisdiction, and provides this declaration as a special appearance for the sole purpose of challenging this Court's personal jurisdiction over Columbia.

3. Plaintiffs' Complaint alleges causes of action for general negligence, premises liability, and products liability relating to an incident which took place entirely in the State of Washington.

-1-

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10" Floor
San Francisco  CA
94104
(415) 705-0400

4.  At the time of the accident Columbia was incorporated in the State of Idaho and had its primary place of business in the State of Washington.

5.  Columbia was not qualified itself to do business in California by registering with the California Secretary of State.   Columbia had no telephone, advertising, employees, operations, real property or facilities in California.   Columbia does not have an agent appointed for service of process in California.

6.  Columbia purchased the bulk latex at issue from Defendant ROHM AND HAAS COMPANY ("R&H"), from Philadelphia, Pennsylvania.  A true and correct copy of the purchase order for the product is attached hereto as "Exhibit A."

7.  Columbia remitted payment for the bulk latex to R&H's payment center in Dallas, Texas.  A true and correct copy of the invoice for this order is attached hereto as "Exhibit B."

8.  Columbia had no contractual relationship with Defendant TRIMAC TRANSPORTATION SERVICES (WESTERN) INC. ("Trimac") related to the shipment of bulk latex involved in the subject incident, and at the time of purchase did not request or know that the bulk latex would be shipped to its Spokane, Washington facility from California. R&H, not Columbia, decides from where the bulk latex is to be shipped. A true and correct copy of the purchase order acknowledgement for the product is attached hereto as "Exhibit C."  When Columbia has made purchases of bulk latex from R&H, Columbia never specified from where they wanted shipments to originate, only that they needed the products delivered to Spokane, Washington, which is where the accident in this case happened.

9.  Plaintiffs' Complaint alleges that Plaintiff SHEIK ZAHID ALI sustained injuries when excessive internal pressure caused a cap to blow off the top of a tanker during unloading at Columbia's warehouse facility in Spokane, Washington.  Columbia did not and does not own, operate, or maintain the subject tanker.

10. Columbia has retail stores in several states, including Alaska, Idaho, Montana, North Dakota, Oregon, Utah, Washington and Wyoming, but **NOT California**. Columbia does not sell or lease property within state of California or outside of California for use in California.

-2-

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco CA
94104
(415) 705-0400

1       11. Columbia has no warranty or service facilities within California through independent

2 contractors.

3       12. Columbia has no loan applications or bank accounts within California.

4       13. Columbia has no consignment shipments for purchase within California.

5       14. Columbia has no litigation by or against defendant in California, except for this case.

6       15. Columbia has no meetings of directors or shareholders within California, although

7 there have been two employee-conferences in California as a work/vacation perk over the last 10

8 years.

9       16. Columbia has no subsidiaries or controlled entities within California.

10       17. Columbia has a website accessible to California residents, but it is passive and online

11 ordering is not available.

12       18. Aside from this case, Columbia has not used California's court system as litigant.

13       19. Since 2003, Columbia has had only one client in California who, on average, has

14 constituted less than one-half of one percent of Columbia's business. Only about 20 sales

15 have been made to this client since 2003. Columbia did not solicit sales from this client or

16 advertise to this client. Other than this client, Columbia does no other sales to California.

17       20. When Columbia orders product from R&H, the agreement does not specify from where

18 products will be shipped. The invoice only says ship to Spokane. In the receipt posting it says the

19 shipment came from California. But, Columbia has not and does not return products to

20 California. If there is a problem with a shipment, Columbia simply denies receipt. If the shipment

21 is accepted and a problem later develops, an outside party would have to be hired to dispose of the

22 materials.

23       21. Columbia negotiates a price with R&H, which is good for a few months. These

24 negotiations have never included requests by Columbia to R&H to ship from California to obtain a

25 cost-benefit.

26       22. Columbia has not consented and does not consent to jurisdiction in the State of

27 California, and it would be unreasonable for Columbia to submit to California jurisdiction

28 based on the aforesaid reasons.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco CA
94104
(415) 705-0400

-3-

DECLARATION OF STEPHEN GORDON IN SUPPORT OF DEFENDANT'S MOTION TO QUASH
UNITED STATES DISTRICT COURT – OAKLAND DIVISION – CASE NO. C07-04263-BZ

1    23. This lawsuit was originally filed in Alameda County Superior Court, California,

2  under case no. HG-07-314291. Defendant Columbia moved to quash service of process for

3  lack of personal jurisdiction.    Before a final determination on that motion, this case was

4  removed to Federal court by other Defendants, Trimac and R&H.

5    I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct.

7

8  Date: _10/9/07_

9                          STEPHEN GORDON
                           Columbia Paint & Coatings
10

11  f:\docs\jsg\ali v trimac (columbia paint)\pleadings\federal motion to dismiss\decl stephen gordon doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jenkins Goodman
Neuman & Hamilton
LLP
117 Montgomery St
10th Floor
San Francisco CA
94101
(415) 705-0400

-4-

DECLARATION OF STEPHEN GORDON IN SUPPORT OF DEFENDANT'S MOTION TO QUASH
UNITED STATES DISTRICT COURT – OAKLAND DIVISION - CASE NO. C07-04263-JSW

# EXHIBIT 'A'

10666102.tif - 6/28/2007 11:17:41 AM

COPY OF INVOICE MUST ACCOMPANY SHIPMENT / OR SENT DELIVERY ADDRESS.

**columbia**
paint & coatings

SEND ORIGINAL INVOICE TO:
COLUMBIA PAINT & COATINGS
P.O. BOX 4589
SPOKANE, WASHINGTON 99220
PHONE 509/535-0954

THIS NUMBER MUST APPEAR ON INVOICES
CASES, BUNDLES, PACKING LISTS
CORRESPONDENCE

PURCHASE
ORDER NO.    **22717**

VENDOR:    ROHM + HAAS

SHIP TO:    CPC Spokane

| PHONE: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ISSUED BY | DATE 7/12/06 | SHIPPING DATE | SHIP VIA | ORDERED FROM: | | PREPAID COLLECT | TERMS | |
| ORDERED | REC'D | DESCRIPTION | | | | UNIT PRICE | ACCOUNT NUMBER | TOTAL |
| 44643.65 ✓ | | Rovace 9900 | RLV-1615 | | | .595 | 1.25-400-1325 | 26562.971 |

RECEIVED
JUL 25 2006
COLUMBIA PAINT & COATINGS

7/19

INVOICE #    MT N/A, ID 12273G-45-1-1, WA 601 129 072, ND 78739, WY 24-T-1983, SD 536-21509-2, UT 88018, AK 33849, OR N/A, WYOMING 24-T-1983
FOR CUSTOMER

PRESOLD    ADDRESS    VENDOR INVOICE #    DATE ORDER RECEIVED 7/19/06    FOR STOCK ✓

ACKNOWLEDGE THIS ORDER IMMEDIATELY.
NO CHARGES ALLOWED FOR BOXING, CRATING OR PACKING
GOODS SUBJECT TO OUR INSPECTION ON ARRIVAL NOTWITHSTANDING PRIOR PAYMENT TO
OBTAIN CASH DISCOUNT.
GOODS REJECTED ON ACCOUNT OF INFERIOR QUALITY OR WORKMANSHIP WILL BE RETURNED
TO YOU WITH CHARGE FOR TRANSPORTATION BOTH WAYS PLUS LABOR RELOADING, TRUCKING, ETC.
AND ARE NOT TO BE REPLACED EXCEPT UPON WRITTEN INSTRUCTIONS FROM US.

RECEIVING CLERK    CREDIT

PURCHASING AGENT    SPOKANE STORE

RECEIVING COPY

07  11:16 FAX 4157050411      JENKINS GOODMAN & NEUMAN

# EXHIBIT "B"

10566102 tif - 6/28/2007 11:17:41 AM

Invoice # 0902774070



**ROHM AND HAAS COMPANY**
100 INDEPENDENCE MALL WEST
PHILADELPHIA, PA 19106-2399 USA

Invoice Date: 7/18/2006

Remit To:
WACHOVIA
P.O. BOX 951665
DALLAS, TX 753951665

| INVOICE # | 0902774070 |
|-----------|------------|
| DATE | 07/18/2006 |
| BILL TO # | |
| SHIP TO # | |
| PO# | 22717 |

189986

Bill To:
COLUMBIA PAINT CO
N 112 HAVEN
SPOKANE, WA 99202

Ship To:
COLUMBIA PAINT CO
N 112 HAVEN
SPOKANE, WA 99202

| PAYMENT TERMS | SHIP DATE | SHIPPING POINT | FOB |
|---------------|-----------|----------------|-----|
| UP TO 08/07/2006 YOU RECEIVE 1.000 % DISCOUNT (UP TO 09/01/2006 WITHOUT DEDUCT) | 07/17/2006 | | |

| ITEM | PRODUCT / DESCRIPTION | MATERIAL # | CUSTOMER MTL # | QUANTITY | UOM | PRICE | AMOUNT - USD ($) |
|------|----------------------|------------|----------------|----------|-----|-------|------------------|
| 1.00 | ROVACE 9900/BULK | | 00000000010081116 | 44,643.84 | LB | 0.5850 | $26,116.53 |
| | | | | | | SUBTOTAL | $26,116.53 |
| | | | | | | TAX RATE | |
| | | | | | | SALES TAX | |
| | | | | | | SHIPPING & HANDLING | |
| | | | | | | TOTAL | $26,116.53 |

Generated: 7/18/2006 9:41:41 AM

Page 1 of 2

Invoice # 0902774070



**ROHM AND HAAS COMPANY**
100 INDEPENDENCE MALL WEST
PHILADELPHIA, PA 19106-2399 USA

Invoice Date: 7/18/2006

**189986**

Remit To:
WACHOVIA
P.O. BOX 951665
DALLAS, TX 753951665

| INVOICE # | 0902774070 |
|---|---|
| DATE | 07/18/2006 |
| BILL TO # | |
| SHIP TO # | |
| PO# | 22717 |

Bill To:
COLUMBIA PAINT CO
N 112 HAVEN
SPOKANE, WA 99202

Ship To:
COLUMBIA PAINT CO
N 112 HAVEN
SPOKANE, WA 99202

| PAYMENT TERMS | SHIP DATE | SHIPPING POINT | FOB |
|---|---|---|---|
| UP TO 08/07/2006 YOU RECEIVE 1.000 % DISCOUNT UP TO 09/01/2006 WITHOUT DEDUCTI | 07/17/2006 | | |

| ITEM | PRODUCT / DESCRIPTION | MATERIAL # | CUSTOMER MTL # | QUANTITY | UOM | PRICE | AMOUNT - USD ($) |
|---|---|---|---|---|---|---|---|
| 1.00 | ROVACE 9900/BULK | | 000000000010081116 | 44,843.84 | LB | 0.5850 | $26,116.53 |
| | | | | | | SUBTOTAL | $26,116.53 |
| | | | | | | TAX RATE | |
| | | | | | | SALES TAX | |
| | | | | | | SHIPPING & HANDLING | |
| | | | | | | TOTAL | $26,116.53 |

Generated: 7/18/2006 9:41:41 AM

Page 1 of 2

# EXHIBIT "C"

Order Acknowledgement

## ROHM AND HAAS
ROHM AND HAAS CHEMICALS LLC
100 INDEPENDENCE MALL WEST
PHILADELPHIA, PA 19106-2399

ROHM IHRRS

| Document Date | Order Number |
|---|---|
| 10/05/2007 | 2366663 |

| Customer P.O. number | |
|---|---|
| 24275 | 10/05/2007 |

| Ship-to / Consignee | 10049356 |
|---|---|
| COLUMBIA PAINT CO
N 112 HAVEN
SPOKANE WA 99202 | |

**Forwarding Agent/Notify Party/End User**

| Transport Mode | Shipping Point |
|---|---|
| Road | Hayward, CA |

**Carrier / Drayage**
TRIMAC TRANSPORTATION SVCS INC

**Terms of Delivery and Payment**
C&F SPOKANE WA

20 days less 1% or 45 Days from Invoice Date

| Sold-to | 10049356 |
|---|---|
| | COLUMBIA PAINT CO
PO Box 4569
SPOKANE WA 99220 |

| Country Shipped From | Country of Destination |
|---|---|
| USA | USA |

**Remit to**
ROHM AND HAAS CHEMICALS LLC
P.O. BOX 951665
DALLAS TX 75395-1665

| Item # | Goods Description / Shipping Marks | Customer Material # | Quantity | Unit Price | Amount |
|---|---|---|---|---|---|
| 10 | 10080986
RHOPLEX (TM) MULTILOBE 200 Emulsion
RHOPLEX MULTI 200/BULK | | 12,000 KG | 0.7600 USD / LB | 20,106.17 USD |
| | **Confirm Date** 10/10/2007 06:30:00    **Quantity Arrival Time** 12,000 KG | | | | |
| | Gross Weight:   12,000.00 KG / 26,455.49 LB
Net Weight:   12,000.00 KG / 26,455.49 LB
NOT REGULATED (NOT DANGEROUS FOR TRANSPORT) | | | | |
| 20 | 10003509
ROPAQUE (TM) ULTRA Opaque Polymer
ROPAQUE ULTRA/BULK | | 8,000 KG | 0.6900 USD / LB | 12,169.53 USD |
| | **Confirm Date** 10/10/2007 06:30:00    **Quantity Arrival Time** 8,000 KG | | | | |
| | Gross Weight:   8,000.00 KG / 17,637.00 LB
Net Weight:   8,000.00 KG / 17,637.00 LB
NOT REGULATED (NOT DANGEROUS FOR TRANSPORT) | | | | |
| | **Total C&F SPOKANE WA** | | | | 32,275.70 USD |

Order Acknowledgement

| | | Document Date | Order Number |
|---|---|---|---|
| **ROHM AND HAAS** |  | 10/05/2007 | 2366663 |
| ROHM AND HAAS CHEMICALS LLC | | **Customer P.O. number** | |
| 100 INDEPENDENCE MALL WEST | | 24275 | 10/05/2007 |
| PHILADELPHIA, PA 19106-2399 | | | |

| Item # | Goods Description Shipping Marks | Customer Material # | Quantity | Unit Price | Amount |
|---|---|---|---|---|---|
| | **Total** | | | | |
| | **Gross Weight:** | 20,000.00 KG / 44,092.49 LB | | | |
| | **Net Weight:** | 20,000.00 KG / 44,092.49 LB | | | |

This Notice constitutes receipt of your order only and does not constitute acceptance. Upon acceptance and delivery, the sale will be subject to the attached Conditions of Sale or the provisions of any contract between us that covers this shipment. The price shown may not include all required charges. The invoice price will govern all sales made.

| | CONTACT: | JOAN MCGOWAN | JMcGowan@rohmhaas.com |
|---|---|---|---|
| | | Ph.: 800-999-0882 | Fax: 800-382-4008 |



| **ROHM AND HAAS**<br>ROHM AND HAAS CHEMICALS LLC<br>100 INDEPENDENCE MALL WEST<br>PHILADELPHIA, PA 19106-2399 | | **Document Date**<br>10/05/2007 | **Order Number**<br>2366663 |
|---|---|---|---|
| | | **Customer P.O. number**<br>24275 | 10/05/2007 |

# CONDITION OF SALES

**1. PLACEMENT OF ORDERS.** All orders shall be received by Seller no later than the 10th business day preceding the shipping date requested by Buyer.

**2. CREDIT.** Each delivery of material is subject to cash or credit arrangements made by Buyer with Seller. If Buyer does not comply with such terms, or Id Seller believes Buyer's Credit standing is impaired, Seller may withhold deliveries. In case of future deliveries until Buyer makes satisfactory cash or credit arrangements for payment of all outstanding balances. If goods have already been delivered, Seller may withhold all future deliveries until Buyer makes satisfactory security arrangements for payment of all outstanding balances. If Buyer fails to make cash or credit arrangements satisfactory to Seller, or to comply with such arrangements, Seller may demand in writing that Buyer provide written assurances that Buyer is able to make payments under the terms of this contract. If Buyer does not provide assurances acceptable to Seller within 15 days of receiving Seller.s demand, Seller may terminate the contract without liability and without waiving any other remedies it may have against Buyer.

**3. TITLE AND RISK LOSS.** Title to, and all risk of loss of, any materials sold hereunder shall pass to Buyer at the point of shipment

**4. GENERAL WARRANTIES OF SELLER.** Seller warrants that (a) all material supplied under this contract will conform to the description stated on the front side hereof, or to written product specifications agreed upon by the parties; and (b) upon payment of the purchase price, Buyer will receive good title to all such material free from any liens, encumbrances or lawful security interests. Except for the foregoing warranties and the patent warranty contained in the following paragraph, SELLER MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED. SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE. Seller, upon request, may furnish to Buyer such technical adviceas it may be able to supply with reference to the use by Buyer of any material delivered hereunder. Seller, however, assumes no obligation or liability for the advice given or the results obtained. Buyer agrees to fully determine the suitability of Seller.s material in Buyer.s formulations and applications prior to adopting them on a commercial scale.

**5. PATENT WARRANTY.** For a period of three (3) years from the date of this contract, Seller warrants that neither the use alone nor the sale in its original state of any material delivered under this contract will infringe any composition-of-matter claim of any United States patent covering the material itself issued as of the date of this contract. If within three (3) years from the date of this contract suit is brought by a third party against Buyer alleging infringement of such a United States patent based upon such use or sale, subject to the terms of this provision, Seller shall defend the suit at its expense, provided Buyer has promptly notified Seller in writing of the charge of infringement and of the suit, Buyerhas taken no action to settle or otherwise prejudice Seller.s ability to defend the suit and Seller is given complete control of the defense of the suit. After receipt of notification, Seller, at its own option, may either (a) procure for Buyer at Seller.s expense the right to continue using or selling the material; (b) replace the material with a different material; or (c) refund the full purchase price of the material, including any transportation costs. Seller.s total liability under this provision shall be limited to the purchase price of the material delivered hereunder and Buyer.s remedies are limited solely to the options set forth in this paragraph. Seller shall have no other or further liability to Buyer for patent infringement, and, except as expressly stated in this paragraph, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, PERTAINING TO CLAIMS OF PATENT INFRINGEMENT.

**6. MATERIAL SAFETY DATA SHEET.** Seller will provide Buyer with a material safety data sheet with information concerning the material and precautions to be taken in the material.s storage and handling. Buyer shall be responsible for knowing all such information and precautions disclosed in the material safety data sheet, and for conveying such information to persons who may be exposed to the material.

**7. INSPECTION.** Promptly upon receipt of all materials delivered under this contract, Buyer shall inspect such materials for any damage, defect or shortage. All claims for shortage or non-delivery and any claim for damage or defect which would reasonably be discoverable in the course of such investigation shall be waived unless Buyer notifies Seller in writing within sixty (60) days after receiving the materials to which the claim relates.

**8. LIMITATION OF REMEDY.** Buyer#s exclusive remedy against Seller for any claim hereunder shall be, at Seller.s option, either (a) recovery of a dollar amount which does not exceed the purchase price of the materials the claim relates to; or (b) replacement of the materials. In either case, subject to the limitations in the preceding sentence shall be Buyer.s exclusive remedy, regardless of whether Buyer.s claim is in contract, tort (including negligence or gross negligence, whether sole or concurrent), or otherwise, so long as the claim arises in connection with this contract. In no event shall Seller be liable for special, indirect, incidental or consequential damages arising out of this transaction, including without limitation lost profits, environmental damages and attorneys. fees. Transportation charges for the return of materials shall not be paid unless authorized in advance by Seller. Buyer understands and agrees that Seller has no control over the use of any materials sold under this contract. Moreover, the value of materials sold under this contract may be substantially less than the value of final products in which Buyer uses such materials. Therefore, Buyer bears all responsibility for, and agrees to indemnify, defend, and hold Seller harmless from, all liability and costs associated with (a) the handling, possession, use or disposal of such materials; and (b) the development, testing, application, performance or resale of any of Buyer.s products made from any of such materials. The provisions of this paragraph shall survive the termination of this contract.

**9. FORCE MAJEURE.** Either party may reduce or suspend deliveries in the event of labor trouble, strike, lockout or injunction, or upon any event beyond the reasonable control of such party (including without limitation shortage of raw material or intermediate upon which the manufacture of the material is dependent), provided such event makes it impracticable to manufacture, transport, accept or use a shipment of the material. If it is impracticable for Seller to supply the total demand for the material becauseof such an event, Seller may allocate its available supply of the material among itself and its customers in a manner it determines to be equitable. During such an allocation, Seller will not be obligated to purchase material from other sources to satisfy its obligations under this contract. Either party may suspend deliveries under this paragraph without liability, but this contract shall otherwise remain in effect. If deliveries are suspended due to force majeure for three (3) consecutive months, either party may cancel this contract upon 30 days written notice.

**10. GOVERNING LAW.** The parties agree to exclude the application of the U.N. Convention on Contracts for the International Sales of Goods, 1980. The parties also agree this contract shall be governed by the domestic law of the Commonwealth of Pennsylvania, except with respect to its choice of law provisions.

**11. ARBITRATION OF DISPUTES.** Any controversy or claim arising out of this contract or the breach thereof, may, at Seller.s option, be referred to non-binding mediation under rules of Seller.s choice. If mediation does not result in settlement of the dispute, (or if Seller does not elect to pursue mediation), Seller shall have the right to refer the dispute to binding arbitration under rules of its choice, or to commence litigation.

**12. WAIVER.** Either party#s failure to insist upon strict performance of any of the terms of this contract will not be construed as a waiver or relinquishment, to any extent, of the right to assert or rely upon such terms, or any other terms, on any future occasion.

**13. SEVERABILITY.** The invalidity of any provision of this contract will not affect the validity of the remaining provisions, and this contract will be construed as if the invalid provision had been omitted.

**14. ENTIRE AGREEMENT; MODIFICATION.** This contract, including the order form on the reverse side and any attachments, constitutes the full understanding of the parties and is a complete and exclusive statement on the terms of their agreement. If there is a conflict between the printed terms and conditions of this form and the terms and conditions on the reverse side or any attachment, the terms and conditions on the reverse side or on the attachment will govern. Any modification of this contract or waiver of its terms must be made in writing and signed by the party claimed to be bound by the modification. No modification of this contract shall be effected by the acknowledgment or acceptance of purchase orders, shipping instruction forms, or any other documents containing terms or conditions different from or in addition to those in this contract, all such different or additional terms being hereby objected to. BY ORDERING FOR SHIPMENT ANY MATERIAL UNDER THIS CONTRACT, BUYER AGREES TO ALL THE TERMS AND CONDITIONS CONTAINED HEREIN.